1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

JOSE NOGALES,
CDCR #G-52536,

Case No.:  22-cv-702-MMA (DEB)

Plaintiff,

13

**ORDER SCREENING COMPLAINT
PURSUANT TO 28 U.S.C. § 1915A**

vs.

14
15

ISU OFFICER BURKE, et al.,

16

Defendants.

17
18
19

Plaintiff Jose Nogales, a state prisoner proceeding *pro se*, has paid the civil filing

20

fee and filed a civil rights Complaint pursuant to 42 U.S.C. § 1983.  Doc. Nos 1–2.  He

21

has also filed a request for service of the Complaint.  Doc. No. 3.

22

**I. S̲c̲r̲e̲e̲n̲i̲n̲g̲ P̲u̲r̲s̲u̲a̲n̲t̲ t̲o̲ 28 U.S.C. § 1915A**

23

**A.     Standard of Review**

24

Because Plaintiff is a prisoner, his Complaint requires a pre-Answer screening

25

pursuant to 28 U.S.C. § 1915A.  Under that statute, the Court must sua sponte dismiss a

26

prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a

27

claim, or seeks damages from defendants who are immune.  *Rhodes v. Robinson*, 621

28

F.3d 1002, 1004 (9th Cir. 2010).

The standard for determining whether a prisoner has failed to state a claim upon which relief can be granted under § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

**B.   Allegations in the Complaint**

Plaintiff alleges that on August 12, 2020, while incarcerated at Centinela State Prison ("Centinela") in Imperial, California, Defendants Centinela Investigative Services Unit ("ISU") Officers Burke and Weiwel searched his cell. Doc. No. 1 ¶ 7. After they strip searched and photographed him, they told him no contraband had been found in his cell and asked: "Where are the phones and drugs Nogales, you're a porter so we know you know, where are they?" *Id*. ¶ 9. Plaintiff denied any such knowledge and asked why they asked him. *Id*. They said an inmate had "dropped incriminating information on countless inmates, one of which was him." *Id*. When Plaintiff asserted his right to remain silent Defendant Weiwel laughed and said "you know there are consequences to not talking to us, right? Are you sure this is how you want to go about it?" *Id*. Plaintiff nodded in the affirmative and Weiwel said "yeah, we'll see about that." *Id.*

On August 17, 2020, Defendants Burke and ISU Officer Lopez served Plaintiff with a "validation packet," which is used by the California Department of Corrections and Rehabilitation ("CDCR") to designate an inmate as an active member or associate of a Security Threat Group ("STG") such as a gang. *Id*. ¶ 10. Plaintiff was "baffled" and asked on what basis was he being validated, to which Defendant Lopez responded "we're doing it because we can. You didn't want to talk to us and you brought attention to yourself so this is what you get." *Id*. Plaintiff states that according to CDCR regulations

three sources are required to validate an inmate as a member or associate of a STG.  *Id.*
¶ 12.  The sources relied on to validate him were a 2008 probation report discussing the
gang-related nature of his commitment offense, photographs of gang tattoos on his body
taken the day of the cell search which had been documented ten years earlier, and a report
authored by Defendant Burke on the day of the search falsely stating Plaintiff admitted
that day to membership in a gang.  *Id.* ¶ 13.  Plaintiff claims Defendants made it seem as
though he was being validated for recent activity when in fact it was retaliation for his
invocation of his right to remain silent on the day his cell was searched.  *Id.* ¶¶ 12, 22.
He filed two inmate grievances challenging the gang validation.  *Id.* ¶¶ 17–18, 23.

On August 26, 2020, Plaintiff's cell was searched by Defendants ISU Sergeant
Tovar and Lieutenant Narvaez and he was strip searched.  *Id.* ¶ 24.  When Plaintiff asked
why he was targeted for another search, Tovar responded "you fu***d up and the
Lieutenant wants to see you."  *Id.*  Defendant ISU Lieutenant Duarte ordered Plaintiff
outside and while they were alone said "those grievances you submitted are making me
do a lot of work.  Maybe you didn't mean to say the things you said, and maybe you want
to withdraw the paperwork, but just know that because you did that, I'm going to be on
you like flies on s**t."  *Id.* ¶¶ 25–26.  Plaintiff informed Defendant Duarte he did not
intend to allow the validation to go unchallenged and Duarte replied "if you continue, I'll
make you disappear."  *Id.* ¶ 26.  When Plaintiff returned to his cell "it was trashed" and
he was told no contraband was found.  *Id.* ¶ 27.

On November 3, 2020, Defendant Burke issued a Rules Violation Report ("RVR")
charging Plaintiff with "construction possession of a contraband cellular device."  *Id.*
¶ 31.  The device was found in a different inmate's cell and contained photographs of
Plaintiff and other inmates posing for pictures.  *Id.* ¶ 32.  At least ten other inmates seen
on the device posing for pictures were issued RVRs for constructive possession of the
device.  *Id.* ¶ 34.  On November 9, 2020, Plaintiff attended a hearing on the RVR in the
office of Defendant Lieutenant Martinez, although all the other inmates had their RVR
hearings conducted by Lieutenant Rodriguez.  *Id.* ¶ 36.  Defendant Martinez found

Plaintiff guilty and assessed the maximum penalty, "90 days loss of packages; 90 days loss of yard and dayroom; and a 5 year loss of family visiting." *Id.* ¶ 37. Plaintiff filed a request for an interview with the Chief Disciplinary Officer and an inmate grievance arguing Defendant Martinez was not fair and impartial and was aware that CDCR regulations limited the loss of family visitation to one year. *Id.* ¶¶ 43–44.

Plaintiff claims his Fourteenth Amendment right to due process was violated by Defendant Burke when he provided a false statement in support of his gang validation (count one), his Fifth Amendment right to be free from retaliation was violated by Defendants Burke, Weiwel and Lopez when they initiated the validation process in retaliation for exercising his right to remain silent (count two), his First Amendment right to be free from retaliation was violated by Defendants Narvaez, Tovar and Duarte when they strip searched him, trashed his cell and threatened him in retaliation for filing inmate grievances (count three), his Fourth Amendment right to be free from unreasonable searches was violated by Defendants Tovar and Narvaez when they conducted a vindictive and harassing strip search (count four), his Fourteenth Amendment right to due process was violated by Defendant Martinez during the RVR hearing because he was not impartial and found him guilty without sufficient evidence (counts five and six), Defendant CDCR Secretary Allison should be enjoined from enforcing his guilty finding for constructive possession of a cellular device because the prison regulation is unconstitutionally vague in violation of the Fourteenth Amendment (count seven), and his First Amendment rights were violated by Defendants Martinez, Burke and Duarte when they filed the RVR in retaliation for filing inmate grievances (count eight). *Id.* ¶¶ 46–101. He seeks monetary, injunctive and declaratory relief. *Id.* ¶¶ 102–23.

## C. Analysis

### 1. Retaliation Claims

Plaintiff seeks to bring retaliation claims under the First and Fifth Amendments against Defendants Burke, Weiwel and Lopez for their role in initiating the gang validation in retaliation for exercising his right to remain silent (count two), against

Defendants Narvaez, Tovar and Duarte for strip searching him, trashing his cell and threatening him in retaliation for filing inmate grievances (count three), and against Defendants Martinez, Burke and Duarte for filing the RVR and depriving him of a fair hearing in retaliation for Plaintiff filing inmate grievances (count eight).[1] *Id.* ¶¶ 56–74, 96–101.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights."). Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

The Complaint plausibly alleges that adverse actions of the type that might chill an inmate's free exercise of his First Amendment rights were taken against Plaintiff, including the filing of a false disciplinary charge and fraudulently initiating a gang validation. *Rhodes*, 408 F.3d at 568-69 (an "adverse action" is an action causing "harm or a threat of harm that would deter a person of ordinary firmness from protected activities."): *Hines v. Gomez*, 108 F.3d 265, 268–69 (9th Cir. 1997) (explaining that a false disciplinary charge against a prisoner in retaliation for filing grievances constitutes adverse action). The Complaint adequately alleges those actions were taken because of

---

[1] The Complaint fails to state a Fifth Amendment claim because Plaintiff is not challenging actions of the federal government. *See Lee v. City of Los Angeles*, 250 F.3d 668, 687, 688 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government - not to those of state or local governments.") Plaintiff indicates that to the extent his claim is not cognizable under the Fifth Amendment he will rely on the First Amendment. Doc. No. 1 ¶ 68.

Plaintiff's protected activity in filing inmate grievances and challenging his validation. *See Watison*, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."); *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (retaliatory gang validation constitutes adverse action).

With respect to the lack of a legitimate penological goal, Plaintiff alleges Defendants Burke, Weiwel and Lopez initiated the gang validation based on a false report and a pretextual revival of ten-year-old indicia of gang membership. He alleges Defendants Tovar, Narvaez and Duarte threatened him, trashed his cell and strip searched him in retaliation for filing inmate grievances, and that Defendants Martinez, Burke and Duarte falsified an RVR and denied him due process at the RVR hearing in retaliation for filing inmate grievances. He alleges that of the more than ten inmates charged with an RVR for constructive possession of the same cellular device because they were seen posing on the device, only Plaintiff had his hearing held by Defendant Martinez in his office who knowingly issued an excessive punishment. Plaintiff has plausibly alleged those actions did not advance a legitimate penological goal. *See Sheppard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016) ("[A] prison official who uses a valid procedure as subterfuge to obscure retaliation 'cannot assert that (his action) served a valid penological purpose, even though (the prisoner) may have arguably ended up where he belonged.'"), quoting *Bruce*, 351 F.3d at 1289 (an abusive use of the gang validation process does not serve a legitimate penological purpose even if the inmate arguably should have been validated absent retaliatory motive).

With respect to Plaintiff's First Amendment retaliation claims against Defendants Lopez, Burke, Weiwel, Tovar, Narvaez, Duarte and Martinez (counts two, three and eight), the allegations in the Complaint "are sufficient to meet the low threshold for proceeding past the screening stage." *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

2. *Due Process Claims*

Plaintiff claims his rights to due process were violated when Defendant Burke

fabricated a report in the gang validation proceedings which falsely stated Plaintiff admitted membership in a gang (count one), and when Defendant Martinez failed to be an impartial hearing officer during the hearing on the RVR (count five) and found him guilty without sufficient evidence (count six).  Doc. No. 1 at ¶¶ 46–55, 80–90.

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (and) (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000), quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

"[A] prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003), citing *Wolff v. McDonnell*, 418 U.S. 539, 564–571 (1974).  When a protected liberty interest arises federal due process requires prisoners be provided: (1) 24-hour advanced written notice of the charges, (2) a written statement from the factfinder which identifies the evidence relied on and the reasons for the action taken, (3) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," (4) assistance at the hearing if he is illiterate or the matter is complex, and (5) a "sufficiently impartial" factfinder.  *Wolff*, 418 U.S. at 564–71.  When a protected liberty interest is not at stake, the minimum requirements of due process require only that "the findings of the prison disciplinary board (be) supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985).  A protected liberty interest arises where a sentence is exceeded in "an unexpected manner" or where an inmate is subject to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff has not plausibly alleged a protected liberty interest sufficient to give rise to the full *Wolff* procedural protections. The restrictions arising from his guilty finding include "90 days loss of packages; 90 days loss of yard and dayroom; and a 5 year loss of family visiting." Doc. No. 1 ¶ 37. There are no allegations the duration of his sentence was affected or that he was subjected to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see e.g. Cooper v. Garcia*, 55 F.Supp.2d 1090, 1098 (S.D. Cal. 1999) (finding no protected liberty interest in the CDCR family visitation program because it is not an "ordinary incident of prison life"). To the extent Plaintiff lost custody credits, a protected liberty interest could arise from that loss, but his due process claim would be barred unless and until he can demonstrate that the loss of credits has been invalidated or reversed. *See Heck v. Humphrey*, 512 U.S. 477, 480–82 (1994) (holding that where success on a prisoner's § 1983 action would necessarily impact the validity of a conviction or duration of a sentence the prisoner must first invalidate the underlying conviction or sentence); *see also Edwards v. Balisok*, 520 U.S. 641, 643–47 (1997) (applying *Heck*'s favorable termination requirement to a prisoner's § 1983 action alleging deprivation of good time custody credits).

Because Plaintiff has failed to plausibly allege that a protected liberty interest arose from the RVR, only the minimum requirements of due process apply, that there be "some evidence" supporting the guilty finding. Plaintiff admits there is such evidence in the form of photographs on the cellular device of him posing for pictures on which the finding of constructive possession was based. Although he claims in count seven that the CDCR regulation providing for such a violation is unconstitutionally vague, he has not plausibly alleged Defendant Martinez denied him the minimum requirements of due process in connection to the guilty finding. *See Hill*, 472 U.S. at 457 (finding the "some evidence" standard is met with "meager" evidence as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise

arbitrary"); *Bruce*, 351 F.3d at 1287–88 (a single piece of evidence with sufficient indicia of reliability satisfies *Hill*'s standard); *Hill*, 472 U.S. at 455 ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.").

Plaintiff alleges that Defendant Burke violated his right to due process by fabricating a report in connection to the gang validation which falsely stated Plaintiff admitted membership in a gang, because he was not given an opportunity to challenge the accuracy and validity of the report.  Doc. No. 1 ¶ 50.  Although as set forth above Plaintiff has plausibly alleged the gang validation was retaliatory, in order to state a due process claim he must identify the "actual" or "critical decisionmaker" and plausibly allege he was prevented from having "an opportunity to present his views to that official."  *Castro v. Terhune*, 712 F.3d 1304, 1308 (9th Cir. 2013).  In other words, it is not sufficient to allege that Defendant Burke falsely reported Plaintiff admitted membership in a gang, Plaintiff must allege he was denied due process in connection to his ability to challenge that report.  *Id*.  Although he so alleges, the Complaint fails to identify a Defendant who deprived him of the ability to challenge the report, and he has not stated a claim against Defendant Burke.  *Id*.; *see also Buckley v. Gomez*, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997) ("a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports."), *aff'd* 168 F.3d 498 (9th Cir. 1999); *see also e.g. Gadsden v. Gehris*, No. 20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.").

Accordingly, the Court dismisses the Fourteenth Amendment due process claims from the Complaint (counts one, five and six) for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121.

### 3.    *Fourth Amendment Claim*

In count four of the Complaint Plaintiff alleges Defendants Tovar and Narvaez

violated his Fourth Amendment right to be free from unreasonable searches by when they conducted vindictive and harassing cell and strip searches.  Doc. No. 1 at ¶¶ 75–79.

"The Fourth Amendment prescription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  In order for a body search to become so unreasonable as to violate the Fourth Amendment it must be "excessive, vindictive, harassing, or unrelated to any legitimate penological purpose." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) ("Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity.").  Plaintiff alleges the strip searches were based on confidential information received from another inmate that he was involved in possession of contraband with the prison and does not allege they were conducted in and excessive or undignified manner.  He has therefore failed to plausibly allege a Fourth Amendment violation.  *Id*. at 333–34 (upholding visual body cavity search for contraband or weapons); *Nunez v. Duncan*, 591 F.3d 1217, 1227–28 (9th Cir. 2010) (finding prisoner's strip search for contraband did not violate the Fourth Amendment because searching for contraband within a prison is reasonably related to a legitimate penological interest of controlling contraband).

Accordingly, the Court dismisses the Fourth Amendment claim from the Complaint (count four) for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121.

### 4.    *Void for Vagueness Claim*

Finally, Plaintiff alleges in count seven of the Complaint that the CDCR regulation under which he was found guilty of constructive possession of a cellular device is unconstitutionally vague because it allowed him to be found guilty merely because he was seen on a cellular device posing for pictures.  He contends that a forensic examination of the device revealed 14,544 images, including "multiple" images of Plaintiff, that over ten inmates were issued RVRs as a result, and he was told he violated California Code of Regulations § 3306 because of "his willingness and ability to possess

and control a contraband cellular phone even if the cellular phone was not discovered in his possession demonstrates constructive possession." Doc. No. 1 ¶¶ 32–34; Ex. K.

A prison disciplinary regulation is not unconstitutionally vague if it defines the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Castro v. Terhune*, 712 F.3d 1304, 1310–11 (9th Cir. 2013) (assuming without deciding void for vagueness doctrine applies to prison disciplinary regulations). "Courts have reasoned that vague statues and regulations should be held void because: (1) individuals should not be punished for behavior they could not have known was illegal; (2) vague laws allow arbitrary and discriminatory enforcement; and (3) vague laws may have a chilling effect on free speech." *Lane v. Salazar*, 911 F.3d 942, 950 (9th Cir. 2018), citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). The regulation at issue here provides that: "Inmates shall not possess or have under their control or constructive possession any . . . wireless communication devices capable of making or receiving wireless communications." Title 15, California Code of Regulations § 3306. Plaintiff's allegation that ordinary people would not understand that constructive possession of a wireless communication device in prison includes posing for photographs taken by the device, and his allegation that the regulation was used against him in an arbitrary and discriminatory manner, "are sufficient to meet the low threshold for proceeding past the screening stage" with respect to this claim. *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

**D.   Leave to Amend**

In light of his *pro se* status, the Court grants Plaintiff leave to amend to attempt to address the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

**E.     Plaintiff's Options**

Because the Court has determined that Plaintiff's First Amendment retaliation claims against Defendants Lopez, Burke, Weiwel, Tovar, Narvaez, Duarte and Martinez (counts two, three and eight), and his void for vagueness claim against Defendant Allison (count seven) survive the *sua sponte* screening process but his remaining claims against the remaining Defendants do not, Plaintiff is given the opportunity to either: (1) notify the Court of his intent to proceed only with the First Amendment retaliation claims in the Complaint against Defendants Lopez, Burke, Weiwel, Tovar, Narvaez, Duarte and Martinez and his void for vagueness claim against Defendant Allison; or (2) file a First Amended Complaint that attempts to correct any or all of the deficiencies of pleading identified in this Order.  Plaintiff must choose one of those options within forty-five (45) days from the date this Order is filed.  If Plaintiff notifies the Court he wishes to proceed only with his claims against Defendants Lopez, Burke, Weiwel, Tovar, Narvaez, Duarte, Martinez and Allison, the Court will issue an Order directing the Clerk to issue the summons as to those Defendants and dismiss all remaining claims and Defendants from this action.  Plaintiff's request to issue a summons is denied without prejudice as premature.

## II. CONCLUSION

Based upon the forgoing, the Court **DISMISSES** all claims in Plaintiff's Complaint against all Defendants without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915A(b) with the exception of Plaintiff's First Amendment retaliation claims against Defendants Lopez, Burke, Weiwel, Tovar, Narvaez, Duarte, and Martinez and the void for vagueness claim against Defendant Allison.  The Court **GRANTS** Plaintiff **forty-five (45) days** leave from the date of this Order in which to either: (1) notify the Court of his intention to proceed with his First Amendment retaliation claims against Defendants Lopez, Burke, Weiwel, Tovar, Narvaez, Duarte and Martinez and the void for vagueness claim against Defendant Allison only; or (2) file a First Amended Complaint that cures the deficiencies of pleading noted in this Order.  Should

Plaintiff file a First Amended Complaint, it must be complete by itself without reference to any previous version of his Complaint.  Any Defendants not re-named and any claims not re-alleged in the First Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated:  June 6, 2022

HON. MICHAEL M. ANELLO
United States District Judge